# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KULWANT SINGH SIDHU, | Case No. 1:23-cv-01358-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.   INTRODUCTION

Plaintiff Kulwant Singh Sidhu ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On May 31, 2019, Plaintiff protectively filed a claim for DIB payments, alleging he became

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

disabled on July 2, 2014, due to chronic back injury, disc herniation in neck, degenerative disc disorder, depression, anxiety, chronic pain, quadriplegia, and major depressive disorder. (Administrative Record ("AR") 21, 105, 106, 128, 129, 350, 358, 380, 396.)

Plaintiff was born on December 2, 1989, and was 29 years old on the date last insured. (AR 33, 66, 86, 105, 128, 358, 380, 396.) He has a high school education, and previously worked as a dialysis technician and a phlebotomist. (AR 33, 48, 351.)

**A.    Relevant Evidence of Record[3]**

In May 2017, Plaintiff presented for an initial psychiatric evaluation with Manolito V. Castillo, M.D. (AR 1067–68.) He complained of worsening depression, sleep disturbance, irritability, frustration, forgetfulness, and problems concentrating. (AR 1067.) Upon mental status examination, Plaintiff was "not oriented" to the month or day of the week, but was oriented to the year and place. (AR 1068.) His mood was "depressed." (AR 1068.) Plaintiff denied having suicidal or homicidal thoughts or any delusional hallucinations, and Dr. Castillo did not observe any thought disturbance. (AR 1068.) Plaintiff was able to recall three unrelated objects immediately and after five minutes, and was able to perform serial three subtractions beginning with 20, which Dr. Castillo noted showed "good memory and attention span presently." (AR 1068.) He was unable to spell the word 'world' backwards. (AR 1068.) Plaintiff's intellect was "average" and his insight and judgment were "good." (AR 1068.) Dr. Castillo diagnosed Plaintiff with major depressive disorder and prescribed medication. (AR 1068.)

Following the evaluation, Plaintiff saw Dr. Castillo monthly from May 2017 to August 2017, and then again from January 2018 to December 2019, for treatment and medication management. (AR 1073–75, 1077–93, 1711–13.) Plaintiff demonstrated anxious and depressed mood from May 2017 to August 2018, at which point his mood was "stable." (AR 1073–75, 1077–1086.)

In September 2017, Plaintiff was referred for a consultation for a neuropsychiatric disorder with Darryl Gerlak, LCSW. (AR 685.) He was noted to have had a "significant decline in functioning within the past 6 months," including "significant short term memory loss" and

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

depression. (AR 685.) LCSW Gerlak noted Plaintiff was "very pleasant" but "struggled to answer questions as he would forget mid-sentence what this writer asked him." (AR 685.)

In March and April 2018, physical therapy notes documented that Plaintiff's mental status and cognitive function "appear[ed] impaired" due to "memory loss." (AR 1001, 1004, 1008, 1010, 1011, 1013, 1016, 1018, 1188.)

Plaintiff presented for a psychiatric evaluation with Ekram Michiel, M.D., in May 2018. (AR 733–57.) Plaintiff complained of anxiety, depression, and poor memory. (AR 733, 734.) Upon examination, Dr. Michiel noted Plaintiff's speech was "normal in process with mild latency," with "intermittent" eye contact, a "depressed" mood, no suicidal ideation, and a "goal directed" thought process with "periods of halting." (AR 735.) When assessing the cognitive skill of orientation, Dr. Michiel noted that Plaintiff "said that he does not remember the days of the weekdays, 'Thursday' and then he said, 'No, it's Friday' and that today was May 5th instead of May 18th and then he looked at his phone and he said, 'Oh yeah, the evaluation was on May 18th.'" (AR 735.) Dr. Michiel noted Plaintiff's attention, concentration, and immediate recall were unimpaired, and he was able to do simple math calculations. (AR 735–36.) Plaintiff mistakenly identified the current president and his abstract thinking was "concrete." (AR 736.) He was also unable to recall what he ate the night before and the birthdays and ages of his children. (AR 736.) Dr. Michele concluded that Plaintiff was "unable to maintain attention and concentration to carry out simple job instructions." (AR 736.)

Plaintiff began undergoing psychotherapy with David S. Sommers, Ph.D., in July 2018. (AR 1084.) In November 2018, Dr. Castillo noted Plaintiff's mood was "improved." (AR 1089.) Plaintiff's mood was "depressed and anxious" in January 2019, but "stable" in March and June 2019. (AR 1091–93.)

In January 2019, a progress note from neurologist Perminder Bhatia, M.D. indicated Plaintiff was experiencing moderate "mental cloudiness." (AR 1042.) From August to December 2019, Plaintiff had "anxious" mood. (AR 1711–13.)

In April 2019, Plaintiff presented for a follow up appointment with Dr. Bhatia (AR 1033–34.) Dr. Bhatia noted that Plaintiff "still ha[d] significant depression." (AR 1033.) Upon

examination, Plaintiff's general appearance, behavior, "stream of talk," mood, content of thought, and "[h]igher mental functions" were normal.  (AR 1033.)

From March to August 2020, Dr. Castillo noted Plaintiff's mood as "anxious" and "depressed."  (AR 1924–27.)  Plaintiff's mood had "improved" in November 2020.  (AR 1928.)  That same month, Plaintiff underwent a mental status evaluation with consultative examiner Lauri Steinbeck, Psy.D.  (AR 1812–16.)  Dr. Steinbeck found Plaintiff's attention and memory were impaired, and his judgment limited.  (AR 1814–15.)

In February 2021, Plaintiff's mood was "anxious," and Dr. Castillo noted that Plaintiff "had a panic attack while he was driving and an ambulance was called in to help him."  (AR 1930.)  Dr. Castillo observed Plaintiff's mood was "depressed" in March 2021, and recommended "pursuing therapy rather than focusing on antidepressant medications."  (AR 1931.)

In April 2021, Plaintiff's mood was "sad," and he reported he was still looking for a therapist.  (AR 1932.)  His mood was "improved" in May 2021, and anxious and depressed yet "manageable" in June and July 2021.  (AR 1935–37.)

In August 2021, Plaintiff presented to the emergency department for evaluation of prescription drug abuse.  (AR 1969–75.)  On examination, Plaintiff had a depressed mood, fair insight, and poor judgment.  (AR 1974.)  The provider concluded that Plaintiff's "presentation and history are consistent with the diagnosis of unspecified mood disorder, unspecified anxiety disorder, hypnotic/sedative use disorder."  (AR 1974.)  Voluntary admission to the inpatient psychiatric unit was recommended.  (AR 1975.)  That same month, Dr. Castillo noted Plaintiff's mood was "depressed and anxious."  (AR 2077.)

Plaintiff presented to the emergency department in September 2021 for suicidal ideation he had been experiencing for the past two weeks that had become severe.  (AR 2080–98.)  He was placed on a psychiatric hold.  (AR 2079, 2081.)  A mental status exam following his psychiatric inpatient hospitalization indicated Plaintiff had "racing thought[s]" and his insight and judgment was "impaired and forgetful."  (AR 2001–02.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on October 24, 2019,

and again on reconsideration on February 20, 2020.  (AR 21, 147–51, 155–61.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 162–97.)  At the hearing on March 4, 2022, Plaintiff appeared with counsel by telephone and testified before an ALJ as to his alleged disabling conditions.  (AR 48–60.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 61–64.)

**C.    The ALJ's Decision**

In a decision dated April 26, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 21–35.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 24–35.)  The ALJ decided that Plaintiff last met the insured status requirements of the Act on September 30, 2019, and he had not engaged in substantial gainful activity from July 2, 2014, the alleged onset date, through September 30, 2019 (step one).  (AR 24.)  At step two, the ALJ found Plaintiff's following impairments to be severe: anxiety, major depressive disorder, multi-level degenerative disc disease of the cervical spine status-post fusion, obesity, and headaches.  (AR 24.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 25–27.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing (as balance is defined in the SCO), stooping, kneeling, crouching, and crawling; frequent reaching, handling, and

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

> fingering bilaterally; occasional overhead reaching bilaterally; no repetitive twisting of neck from side to side; the claimant must alternate between sitting and standing by standing for 5 minutes after every 1 hour of sitting remaining on task; the avoidance of unprotected heights and workplace hazards; no pushing or pulling with the upper or lower extremities; no work with vibrations; simple, routine tasks not at a production pace; occasional interactions with supervisors and coworkers; no interactions with the general public; and occasional changes to a routine work setting.

(AR 27–33.) Although the ALJ recognized that Plaintiff's impairments "could have reasonably been expected to cause the above alleged symptoms reasonably related to those impairments[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR 32.)

The ALJ determined that Plaintiff could not perform his past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 34–35.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 62–63.) The VE testified that a person with the RFC specified above could perform the jobs of document preparer, final assembler, and table worker. (AR 62–63.) The ALJ ultimately concluded Plaintiff was not disabled at any time from July 2, 2014, the alleged onset date, through September 30, 2019, the date last insured. (AR 35.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 2, 2023. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v.*

1  *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends the ALJ erred in the consideration of the persuasiveness of consultative examiner Dr. Michiel's opinion because the ALJ's analysis was based on a mischaracterized and incomplete record. Plaintiff also contends the ALJ failed to articulate clear and convincing reasons for rejecting his subjective-symptom testimony. Plaintiff therefore requests that this Court remand

for further proceedings.  (Docs. 15, 23.)

The Commissioner contends that the ALJ reasonably considered Dr. Michel's opinion, and that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms.  (Doc. 22.)

Because further proceedings are required regarding the opinion of Dr. Michiel, the Court does not reach the subjective-symptom-testimony issue.[5]

**A.     Legal Standard**

Plaintiff's claim for DIB is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the

---

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Michiel's opinion.

**B.    Analysis**

The ALJ did not find Dr. Michiel's opinion that Plaintiff was "unable to maintain attention

and concentration to carry out simple job instructions" persuasive, reasoning that it was

> not supported by this physician's examination of the claimant. At the consultative examination, [Plaintiff] was able to do digit span four out of five forwards and backwards correctly. (10F). Moreover, the opinion is not consistent with the findings of [Plaintiff's] treating providers. Mental status examination findings reported by [Plaintiff's] treating providers were generally intact but for a depressed/anxious mood. (*See e.g.*, 8F/9; 15F/12; 17F/1, 9, 12, 14). [Plaintiff] displayed a good memory, average intellect, normal fund of knowledge, intact attention and concentration, and good insight/judgement. (*See e.g.*, 8F/9; 15F/12; 17F/1, 9, 12, 14).

(AR 32.)

An ALJ may not cherry-pick evidence in evaluating a medical opinion. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits). Here, the ALJ isolated only one examination finding by Dr. Michiel that the ALJ concluded undermined his opinion (*i.e.*, digit span test), but ignored the other findings by Dr. Michiel that support it, such as that Plaintiff did "not remember the days of the weekdays," that he initially mistakenly identified the current president, and that he was unable to recall what he ate the night before and the birthdays and ages of his children. (AR 736.)

The medical evidence on which the ALJ relies in evaluating the consistency of Dr. Michiel's opinion is also misleading. AR 691 ("8F/9") is the second page of a June 2017 consultation visit at a neuroscience clinic that does not document a mental status examination. AR 1067 ("17F/1") is the first page of Dr. Castillo's initial psychiatric evaluation in May 2017, and does not document mental status examination results. In fact, those results, included on the following page, are not as "generally intact" as the ALJ represents. While they do report some normal findings, they also document Plaintiff's lack of orientation to the month or day of the week and his inability to spell the word "WORLD" backwards correctly. (*See* AR 1068.) Finally, the mental status examinations in

AR 1075 ("17F/9"), 1078 ("17F/12), and 1080 ("17F/14") are directed only to Plaintiff's mood and thought processes and do not, contrary to the ALJ's characterization, assess Plaintiff's memory, intellect, fund of knowledge, attention, concentration, insight, or judgment.

Other medical records that do include such assessments, and which are consistent with Dr. Michiel's opinion, the ALJ (at best) failed to connect to their persuasiveness findings or (at worst) willfully ignored.  For example, in September 2017, LCSW Gerlak noted Plaintiff had a "significant decline in functioning within the past 6 months," including "significant short term memory loss" and depression.  (AR 685.)  Specifically, LCSW Gerlak noted Plaintiff "struggled to answer questions as he would forget mid-sentence what this writer asked him."  (AR 685.)  In March and April 2018, physical therapy notes documented that Plaintiff's mental status and cognitive function "appear[ed] impaired" due to "memory loss."  (AR 1001, 1004, 1008, 1010, 1011, 1013, 1016, 1018, 1188.)  A progress note from Dr. Bhatia in January 2019 indicated Plaintiff was experiencing moderate "mental cloudiness."  (AR 1042.)

After the relevant period,[6] Dr. Steinbeck found Plaintiff's attention and memory were impaired, and his judgment limited.  (AR 1814–15.)  During an evaluation at the emergency department, Plaintiff demonstrated poor judgment, and voluntary admission to the inpatient psychiatric unit was recommended.  (AR 1974, 1975.)  Plaintiff's worsening symptomology ultimately resulted in him being placed under an inpatient psychiatric hold (AR 2080–98), after which his insight and judgment was noted to be "impaired and forgetful."  (AR 2001–02.)  An independent review of the record therefore reflects that, contrary to the ALJ's conclusion, Dr. Michiel's opinion that Plaintiff is "unable to maintain attention and concentration to carry out simple job instructions" is consistent with evidence in the medical record.

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record.  *Ford*, 950 F.3d at 1154.  It is also mindful of the deference desired by the

---

[6] As stated by the Ninth Circuit: "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability.  It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted).  *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of . . . pre-[date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832) (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225).

agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 404.1520c(b)(2). Harmonizing this requirement with current Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do.[7]

    As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to Dr. Michiel's opinion. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154. However, because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits." *Buethe*, 2021 WL 1966202, at *7.

---

[7] The error is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the VE testified that the addition to Plaintiff's RFC of a requirement of a reminder from a supervisor every 30 minutes to stay on task would preclude the identified jobs of document preparer, final assembler, and table worker. (AR 63–64.) The Court therefore cannot "confidently conclude" that "no reasonable ALJ" considering Dr. Michiel's opinion could have reached a different disability determination. *See Marsh*, 792 F.3d at 1173 (ALJ's failure to consider medical opinion, which described the plaintiff as "pretty much nonfunctional," was not harmless).

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Kulwant Singh Sidhu against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 23, 2024**              /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE